UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

DENNISE ABINACER,

                              Plaintiff,

        -against-

KILOLO KIJAKAZI,[1]
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
-----------------------------------------------------------------------x

**OPINION AND ORDER**

20-cv-10153 (AEK)

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[2]**

Plaintiff Dennise Abinacer brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner"), which denied her application for benefits under the Social Security Act (the "Act"). ECF No. 1. Currently pending before the Court are Plaintiff's motion, and the Commissioner's cross-motion, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. ECF Nos. 31, 41. For the reasons that follow, Plaintiff's motion (ECF No. 31) is GRANTED, the Commissioner's motion (ECF No. 41) is DENIED, and the case is remanded for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g).

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi has been substituted as the Defendant in this action.

[2] The parties have consented to this Court's jurisdiction for all purposes pursuant to 28 U.S.C. § 636(c). ECF No. 23.

# BACKGROUND

## I.   Procedural History

On January 9, 2015, Plaintiff filed an application for disability insurance benefits ("DIB")
and Supplemental Security Income ("SSI") benefits pursuant to the Act, alleging January 1, 2009
as the onset date of her disability.  Administrative Record ("AR") 321, 322.[3]  Plaintiff claimed
she was disabled due to rheumatoid arthritis, asthma, diabetes mellitus, depressive disorder,
anxiety state, post-traumatic stress disorder, and ADHD.  AR 595.  Following the denial of
Plaintiff's claim by the Social Security Administration (the "SSA"), AR 321, 322, Plaintiff
requested a hearing before an administrative law judge ("ALJ"), AR 366-68.  An administrative
hearing was held on April 12, 2017 before ALJ Lori Romeo, at which Plaintiff appeared *pro se*
and testified.  AR 220-73.  A medical expert, Dr. Alvin Stein, and a vocational expert, Dr. Pat
Green, appeared by telephone and testified at the hearing as well.  *Id.*  On June 9, 2017, ALJ
Romeo issued a decision finding that (1) due to an earlier denial of benefits on January 30, 2012,
Plaintiff's claims for benefits through that date were denied on the basis of *res judicata*, and
further adjudication of the same facts was precluded; and (2) Plaintiff was not disabled for the
period from January 31, 2012 through the date of the decision.  AR 326-38.  Plaintiff filed a
request for review of the June 9, 2017 decision with the SSA's Appeals Council, and on
September 25, 2018, the Appeals Council remanded the case to the ALJ for further
administrative proceedings.  AR 344-48.  As set forth in the Appeals Council order, because
revisions had been made to SSA regulations regarding mental health impairments on January 17,
2017, Plaintiff's earlier claims could not be barred by *res judicata*, and the ALJ was required to

---

[3] Citations to "AR" refer to the certified copy of the administrative record filed by the
Commissioner.  ECF No. 26.

"issue a decision on the current application for a period of disability and disability benefits."  AR 346.

A second hearing was held before ALJ Romeo on May 16, 2019.  AR 102-218.  Plaintiff appeared and testified at the hearing and was represented by an attorney.  A medical expert, Dr. Michael Falkove, and a psychological expert, Dr. Ricardo Buitrago, testified by telephone, and a vocational expert, Michael Smith, testified in person.  *Id.*  ALJ Romeo issued a second decision on October 4, 2019, finding that Plaintiff was not disabled within the meaning of the Act from the alleged onset date of January 1, 2009 through the date of the decision.  AR 10-37.  Plaintiff subsequently filed a request for review of this decision with the Appeals Council, and on September 29, 2020, the Appeals Council denied the request for review.  AR 1-6.  That made the ALJ's October 4, 2019 decision the final decision of the Commissioner.  The instant lawsuit, seeking judicial review of the October 4, 2019 decision, was filed on December 3, 2020.  ECF No. 1.

## II.     Testimonial, Medical, and Vocational Evidence

Both parties have provided summaries of the relevant testimonial, medical, and vocational evidence contained in the administrative record.  *See* ECF No. 32 ("Pl.'s Mem. of Law") at 2-10; ECF No. 42 ("Def.'s Mem. of Law") at 2-11.  Based on an independent and thorough examination of the record, the Court finds that the parties' summaries of the evidence are largely comprehensive and accurate.  Accordingly, the Court adopts these summaries and discusses the evidence in the record in more detail to the extent necessary to a determination of the issues raised in this case.  *See, e.g.*, *Banks v. Comm'r of Soc. Sec.*, No. 19-cv-929 (AJN) (SDA), 2020 WL 2768800, at *2 (S.D.N.Y. Jan. 16, 2020), *adopted by* 2020 WL 2765686 (S.D.N.Y. May 27, 2020).

## APPLICABLE LEGAL PRINCIPLES

### I.   Standard of Review

The scope of review in an appeal from a Social Security disability determination involves two levels of inquiry.  First, the court must review the Commissioner's decision to assess whether the Commissioner applied the correct legal standards when determining that the plaintiff was not disabled.  *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  "'Failure to apply the correct legal standards is grounds for reversal.'"  *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Second, the court must decide whether the Commissioner's decision was supported by substantial evidence.  *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 106 (quotation marks omitted).  The "substantial evidence" standard of review is "very deferential," and it is not the function of the reviewing court "to determine *de novo* whether a plaintiff is disabled."  *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (quotation marks omitted).  To determine whether a decision by the Commissioner is supported by substantial evidence, courts must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn."  *Id.* (quotation marks omitted).  "The substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Id.* (quotation marks omitted) (emphasis in original).  "'If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.'"  *Id.* (quoting *McIntyre v. Colvin*, 758 F3d 146, 149 (2d Cir. 2014)).

II.     **Determining Disability**

The Act defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual is disabled under the Act if he or she suffers from an impairment which is "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."  *Id.*

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must follow in determining whether a particular claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The Commissioner first considers whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).  If the claimant is engaged in substantial gainful activity, then the Commissioner will find that the claimant is not disabled; if the claimant is not engaged in substantial gainful activity, then the Commissioner proceeds to the second step, at which the Commissioner considers the medical severity of the claimant's impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant suffers from any severe impairment, the Commissioner at step three must decide if the impairment meets or equals a listed impairment;

listed impairments are presumed severe enough to render an individual disabled, and the criteria

for each listing are found in Appendix 1 to Part 404, Subpart P of the SSA regulations.  20

C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

      If the claimant's impairments do not satisfy the criteria of a listed impairment at step

three, the Commissioner must then determine the claimant's residual functional capacity

("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  A claimant's RFC represents "the most [he or

she] can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

After determining the claimant's RFC, the Commissioner proceeds to the fourth step to

determine whether the claimant can perform his or her past relevant work.  20 C.F.R. §§

404.1520(a)(4)(iv), (e)-(f), 416.920(a)(4)(iv), (e)-(f).  If it is found that the claimant cannot

perform his or her past relevant work, or does not have any past relevant work, the

Commissioner proceeds to step five to consider the claimant's RFC, age, education, and work

experience to determine whether he or she can make an adjustment to other work.  20 C.F.R. §§

404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).  To support a finding that the claimant is disabled,

there must be no other work existing in significant numbers in the national economy that the

claimant, in light of his or her RFC and vocational factors, is capable of performing. 20 C.F.R.

§§ 404.1560(c), 416.960(c).

      The claimant bears the burden of proof on the first four steps of this analysis.  *DeChirico*

*v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998).  If the ALJ concludes at an early step of the

analysis that the claimant is not disabled, he or she need not proceed with the remaining steps.

*Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 2000).  If the fifth step is necessary, the burden shifts

to the Commissioner to show that the claimant is capable of performing other work.  *DeChirico*,

134 F.3d at 1180.

**DISCUSSION**

Plaintiff seeks reversal of the Commissioner's decision or, in the alternative, remand of this matter to the SSA for further administrative proceedings.  Pl.'s Mem. of Law at 1.  She contends that the ALJ improperly evaluated the medical evidence, and did not follow the treating physician rule, by failing to give good reasons for not giving controlling weight to the medical opinions of Plaintiff's treating physician.  *Id.* at 13-22.  Additionally, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because it does not incorporate all of her documented limitations.  *Id.* at 22-26.  The Commissioner seeks to have her final decision affirmed; she maintains that the ALJ's decision is supported by substantial evidence and is based upon the application of correct legal standards.  Def.'s Mem. of Law at 14-22.

As discussed below, the Court finds that the Commissioner failed to apply the correct legal standards, and therefore grants Plaintiff's motion for judgment on the pleadings, denies the Commissioner's motion, and directs that the matter be remanded to the SSA for further proceedings.

I.     **The ALJ's Decision**

ALJ Romeo applied the five-step sequential analysis described above and issued a decision finding that Plaintiff was not disabled from January 1, 2009, her alleged disability onset date, through the date of the decision, October 4, 2019.  AR 37.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2009.  AR 13.  Second, the ALJ determined that Plaintiff suffered from the severe impairments of rheumatoid arthritis, obesity, hypertension, asthma, diabetes mellitus type 2, PTSD, major depressive disorder, anxiety, history of cocaine abuse, and marijuana abuse.  *Id.*  The ALJ also found that Plaintiff

had non-severe impairments of hidradenitis suppurativa and anemia, as well as the non-

medically determinable impairment of ADHD.  AR 13-14.  Third, the ALJ concluded that

Plaintiff did not have any impairment or combination of impairments that met or medically

equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix

1.  AR 15-18.

> According to the ALJ, Plaintiff retained the RFC to
>
> perform sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a)[4] except that she needs to use a cane occasionally.  She can
> occasionally push and pull and reach overhead, frequently handle, finger,
> and feel, and can reach in front at desk level frequently.  She cannot work
> on ladders or at heights, but can occasionally climb stairs and occasionally
> be exposed to respiratory irritants and extremes of cold.  She is further
> limited to simple tasks in which [she] does not work with the public and
> has only occasional and casual contact with co-workers.

AR 18.  The ALJ determined Plaintiff's RFC by applying the two-step framework described in

20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p,[5] concluding first that Plaintiff's "medically

determinable impairments could reasonably be expected to cause some of the alleged

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

[5] The ALJ specified that the first step in this process is to determine "whether there is an underlying medically determinable physical or mental impairment(s)—*i.e.*, an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms."  AR 18.  The second step in the process, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown," is for the ALJ to "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."  *Id.*  "[W]henever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ] must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities."  *Id.*

symptoms," but second that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 20.  The ALJ provided a detailed summary of the evidence in the record, including Plaintiff's Disability and Function Reports; her hearing testimony; and treatment notes from her various medical providers.  *See* AR 18-27.

ALJ Romeo also discussed the opinion evidence in the record, including opinions from treating sources, consultative examiners, and testifying experts.  AR 27-35.  Of particular relevance to the issues raised in the instant cross-motions, ALJ Romeo assigned little weight to the February 2014 to May 2016 opinions of Plaintiff's treating physician Dr. Lorraine Tosiello. AR 28.  With respect to Dr. Tosiello's August 9, 2016 medical source statement, the ALJ gave different weights to different aspects of Dr. Tosiello's opinion—great weight with respect to Plaintiff's ability to lift, carry, reach overhead, and climb, and that Plaintiff could have only limited exposure to unprotected heights; and partial weight or little weight to the rest of the opinion.  AR 28-29.  The ALJ gave "little weight" to Dr. Tosiello's February 2017 opinion, AR 29, and "limited weight" to Dr. Tosiello's February 28, 2019 opinion in a "Report of Physical Impairment," AR 30.  ALJ Romeo also did not "give[] much weight" to Dr. Tosiello's February 26, 2019 opinion in a Psychiatric Functional Assessment.  AR 29-30.

At the fourth step, the ALJ determined that Plaintiff had no past relevant work.  AR 36.

At the fifth step, the ALJ noted that Plaintiff, who was 38 years old on the alleged disability onset date, was a "younger individual age 18-44" at that time, and changed age category to a "younger individual age 45-49" as of the date of the decision; that Plaintiff had the equivalent of a high school education and could communicate in English; and that transferability

of job skills was not an issue because Plaintiff did not have past relevant work.  AR 36.  ALJ Romeo found that based on Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  *Id.*  The ALJ explained that if Plaintiff "had the residual functional capacity to perform the full range of sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.27."  *Id.*  But the ALJ concluded that Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations."  *Id.*  Thus, "[t]o determine the extent to which these limitations erode the unskilled sedentary occupational base," the ALJ consulted the vocational expert ("VE") to evaluate "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]."  *Id.*  The VE testified that Plaintiff could perform the requirements of representative unskilled, sedentary occupations such as (1) addresser (9,890 jobs in the national economy); (2) document preparer (66,203 jobs in the national economy); and (3) waxer (1,591 jobs in the national economy).  AR 36-37.  Citing SSR 00-4p, the ALJ determined that the VE's testimony was "consistent with the information contained in the Dictionary of Occupational Titles."  AR 37.  Relying upon the VE's testimony, the ALJ found that, "considering [Plaintiff's] age, education, work experience, and [RFC]," Plaintiff could adjust to other work that existed in significant numbers in the national economy.  *Id.*  ALJ Romeo therefore concluded that Plaintiff was not disabled during the period from January 1, 2009 through October 4, 2019.  *Id.*

II.     **The ALJ's Evaluation of the Medical Evidence**

A.     **The Treating Source Rule**

As a general matter, an ALJ is directed to consider "every medical opinion" in the record, regardless of its source.  20 C.F.R. §§ 404.1527(c), 416.927(c).[6]  Yet not every medical opinion is assigned the same weight.  Under SSA regulations, the opinions of a treating source as to the nature and severity of a claimant's impairments are generally, but not always, entitled to "more weight" relative to those from other treatment providers.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995).  Such opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Rugless v. Comm'r of Soc. Sec.*, 548 F. App'x 698, 700 (2d Cir. 2013) (summary order).  Conversely, opinions from treating sources "need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (a treating source opinion is not afforded controlling weight if it is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts.").

In the event that a treating source's opinion is not given controlling weight, the ALJ must still consider various factors to determine the appropriate amount of deference to assign to that opinion.  These factors include: (i) the length of the treatment relationship and the frequency of

---

[6] Citations to SSA regulations in this section are to the version of the "treating source rule" that is applicable to claims filed before March 27, 2017.  Plaintiff filed for DIB and SSI on January 9, 2015; accordingly, this version of the treating source rule is the applicable standard for this matter.

examination; (ii) the nature and extent of the treatment relationship; (iii) the extent to which the medical source provides relevant evidence to support an opinion; (iv) the extent to which the opinion is consistent with the record as a whole; (v) whether the opinion is given by a specialist; and (vi) other factors which may be brought to the attention of the ALJ.  20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(c)(6), 416.927(c)(2)(i)-(ii), (c)(3)-(c)(6); *see Burgess v. Astrue*, 537 F.3d 117, 129 (2d Circ. 2008).  The ALJ need not provide a "slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order); *see also Winder v. Berryhill*, 369 F. Supp. 3d 450, 458 (E.D.N.Y. 2019) ("An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule and provided good reasons for the weight [he or] she gives to the treating source's opinion.") (cleaned up); *Martinez-Paulino v. Astrue*, No. 11-cv-5485 (RPP), 2012 WL 3564140, at *16 (S.D.N.Y. Aug. 20, 2012) ("It is not necessary that the ALJ recite each factor explicitly, only that the decision reflects application of the substance of the rule.").  Nonetheless, the Commissioner must "always give good reasons in [his or her] notice of determination or decision for the weight [he or she] give[s] [a claimant's] treating source's medical opinion," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Colgan v. Kijakazi*, 22 F.4th 353, 360 (2d Cir. 2022), and must "comprehensively set forth reasons for the weight" ultimately assigned to the opinion of the treating source, *Halloran*, 362 F.3d at 33.  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand."  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see Burgess*, 537 F.3d at 129-30.

As the Second Circuit more recently explained in *Estrella v. Berryhill*,

> [a]n ALJ's failure to explicitly apply the *Burgess* factors when assigning
> weight . . . is a procedural error.  If the Commissioner has not otherwise

> provided good reasons for its weight assignment, [the court is] unable to
> conclude that the error was harmless and consequently [will] remand for
> the ALJ to comprehensively set forth its reasons.  If, however, a searching
> review of the record assures [the court] that the substance of the treating
> physician rule was not traversed, [the court] will affirm.

925 F.3d 90, 96 (2d Cir. 2019) (cleaned up).  Certain findings, such as whether a claimant is

disabled and cannot work, are reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(1),

416.927(d)(1); *see Schillo*, 31 F.4th at 70 ("The ultimate finding of whether a claimant is

disabled and cannot work is reserved to the Commissioner.") (cleaned up).

### B.      The ALJ's Application of the Treating Source Rule

Plaintiff's treating physician Dr. Lorraine Tosiello, who specialized in internal medicine,

provided seven opinions regarding Plaintiff's physical impairments and one opinion regarding

Plaintiff's mental impairments.  ALJ Romeo acknowledged that Dr. Tosiello "ha[d] been

[Plaintiff's] primary care provider since 2011 and s[aw] [Plaintiff] monthly."  AR 28.  But the

ALJ was inconsistent in her analysis of Dr. Tosiello's various opinions, and she procedurally

erred by failing, in multiple instances, to explicitly apply the *Burgess* factors when assigning less

than controlling weight to Dr. Tosiello's opinions.  That error was not harmless, because the ALJ

additionally failed in those instances to otherwise provide good reasons for the weight that she

gave Dr. Tosiello's opinions.  As the Second Circuit explained in *Estrella*, when the ALJ

procedurally errs by failing to "explicitly apply the *Burgess* factors," "the question becomes

whether a searching review of the record assures [the court] that the substance of the rule was not

traversed—*i.e.*, whether the record otherwise provides good reasons for assigning little weight to

[the treating physician's] opinion."  925 F.3d at 96 (cleaned up).  Here, the Court "cannot be

confident . . . that notwithstanding this procedural error, the substance of the treating physician

rule was not traversed."  *Hamilton v. Comm'r of Soc. Sec.*, No. 22-612-cv, 2023 WL 2395931

(2d Cir. Mar. 8, 2023) (summary order).  Accordingly, the matter must be remanded to the Commissioner for further administrative proceedings.

With respect to Dr. Tosiello's opinions regarding Plaintiff's physical impairments, the ALJ addressed the first four opinions—single-page documents dated February 6, 2014, February 5, 2015, December 8, 2015, and May 31, 2016—as a group.  AR 28.  The ALJ thereafter separately addressed each of the other three opinions, dated August 9, 2016, February 7, 2017, and February 28, 2019.  AR 28-29, 30.  ALJ Romeo also separately addressed Dr. Tosiello's opinion from February 26, 2019, which assessed Plaintiff's mental impairments.  AR 29-30.  While ALJ Romeo ascribed different weights to Dr. Tosiello's opinions or portions thereof, the ALJ did not assign controlling weight to any of Dr. Tosiello's opinions.

ALJ Romeo's failure to apply the correct legal standards is most notable in her assessments of Dr. Tosiello's more extensive opinions regarding Plaintiff's physical impairments from August 9, 2016, February 7, 2017, and February 28, 2019.  Each of these opinions was provided in the form of detailed questionnaires regarding various exertional and nonexertional limitations.  *See* AR 1296-1301 (August 9, 2016), AR 1334-39 (February 7, 2017), AR 1797-1801 (February 28, 2019).  As to each opinion, however, the ALJ provided little, if any, discussion of the basis for the weight that she assigned to the opinion or any portion thereof.

For example, in assessing Dr. Tosiello's August 9, 2016 opinion, the ALJ did not discuss any *Burgess* factors or any reasons at all why she afforded (i) "great weight" to the parts of the opinion regarding Plaintiff's capacity to lift, carry, reach overhead, climb, and that Plaintiff could have only limited exposure to unprotected heights; (ii) "only partial weight" to the parts of the opinion regarding Plaintiff's capacity for reaching in all other directions, handling, and fingering; and (iii) "little weight" to the parts of the opinion regarding Plaintiff's limitations in

feeling, pushing, and pulling with the bilateral hands, operation of foot controls, balancing, stooping, kneeling, crouching, crawling, noise tolerance, exposure to moving mechanical parts, humidity and wetness, and vibrations.  AR 29.  To the extent that ALJ Romeo provided any explanation for her assessment of Dr. Tosiello's August 9, 2016 opinion, it appears to have been with respect to Dr. Tosiello's opinion that Plaintiff could never handle or finger.  ALJ Romeo stated that she could not "give controlling or even significant weight" to this opinion "because clinically, [Plaintiff] has had full use of hands upon examination and also performs her activities of daily living independently without a home health aide," AR 28-29; to support this assertion, the ALJ cited the report of consultative examiner Dr. Aurelio Salon, AR 1282, 1284.  Dr. Salon's report, which was based on a single examination of Plaintiff, stated, with respect to activities of daily living, that Plaintiff could "cook, clean, do laundry, and shop.  She can shower and dress by herself.  She watches TV, listens to the radio, and reads."  AR 1282.  Upon examination, Dr. Salon found that Plaintiff's hand and finger dexterity were intact, and her grip strength was "5/5 bilaterally."  AR 1284.

But Dr. Falkove—the medical expert who testified at the May 16, 2019 administrative hearing after having had a chance to review all of Plaintiff's medical records—testified that Dr. Salon's opinion was "totally inconsistent with anything else in the record," AR 157, and that Dr. Salon's statement "just makes no sense whatsoever," AR 158.  Dr. Falkove, who testified that he was familiar with SSA listings and exertional levels, AR 150-51, also testified that due to the restrictions on her physical capabilities, the best Plaintiff would be able to manage would be sedentary work with frequent absences, along with environmental limitations because of her asthma, AR 155-57.  Given that one of the few explanations that ALJ Romeo provided for discounting the opinions of Plaintiff's treating physician was a reliance on a consultative

examiner whose opinion was roundly and harshly criticized by the testifying expert at the administrative hearing, it was incumbent upon ALJ Romeo to provide a meaningful explanation for the significant conflicts between these two medical sources, but she did not do so.

To the extent that Plaintiff's purported ability to perform her activities of daily living independently without a home health aide formed the basis for the varying weights that ALJ Romeo gave to other aspects of Dr. Tosiello's opinion, the ALJ provided no explanation whatsoever for how this impacted her assessment or why it led to assigning different weights to different aspects of the opinion.  Elsewhere in the record, there is evidence that Plaintiff was more limited in her activities of daily living than she reported in her one-time visit with Dr. Salon, and that she received help from family or friends for many of these activities.  At the February 21, 2017 consultative examination by John Nikkah, Ph.D. in connection with Plaintiff's mental impairments, Plaintiff stated that she could dress, bathe, and groom herself daily and take public transportation independently, but also that she could only cook and prepare food two to three times per week, do general cleaning once per week, do laundry once per month, and go shopping once per week.  AR 1309.  Plaintiff "attribute[d] difficulties in performing her daily tasks primarily to pain symptoms, limited mobility, and occasional lack of motivation and distractibility" and stated that "her son [was] readily available to assist her with any task she [found] to [*sic*] challenging."  AR 1309-10.  Plaintiff reported to Dr. Nikkah that she had traveled to the appointment alone and lived with her son.  AR 1306.  At the internal medicine consultative examination performed that same day at the same location by Dr. Allen Meisel, Plaintiff also reported that she cooked, cleaned, did laundry, and shopped when she felt well, but that if she did not feel well, then friends helped her.  AR 1317.  At her April 12, 2017 administrative hearing, Plaintiff testified that she lived with her adult son and that he would help

her with "whatever . . . need[ed] to be done" and did "a lot of the cleaning."  AR 231-32; *see also* AR 1418 (Dr. Tosiello's treatment record for an appointment on June 28, 2016 notes that Plaintiffs' sons live with her).[7]  As explained below, an individual does not have to be completely unable to perform activities of daily living independently in order to be considered disabled, and in Plaintiff's case there is ample evidence that she was not nearly as independent in her activities of daily living as the ALJ's brief reference seems to suggest.  For all of these reasons, the ALJ's limited reasoning for the weight she gave to portions of Dr. Tosiello's August 9, 2016 opinion does not provide the Court with a sufficient basis to discern the rationale for the ALJ's decision to discount this aspect of Dr. Tosiello's opinion.

The ALJ also rejected the part of Dr. Tosiello's August 9, 2016 opinion which noted that Plaintiff should have no exposure to dust, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat.  While she did acknowledge that Plaintiff "should have some restriction in exposure to dust, odors, fumes, and pulmonary irritants as well as extreme cold," ALJ Romeo based this more limited restriction on the finding that Plaintiff's asthma "is relatively controlled with medication and thus [she] can have occasional exposure," AR 29, a conclusion for which the ALJ cited Dr. Tosiello's treatment records.  *See* AR 1378 (May 28, 2015 appointment— Plaintiff reports that asthma is "totally controlled"), 1405 (March 15, 2016—Plaintiff reports that asthma is "better controlled"), 1413 (April 26, 2016—Plaintiff reports that asthma is "better controlled").  But Dr. Tosiello's treatment records for subsequent appointments note deterioration of Plaintiff's asthma condition: on May 31, 2016, Plaintiff's asthma "ha[d] become worse," and Dr. Tosiello noted that it "gets worse in this pollen season," AR 1414; on June 28,

---

[7] Curiously, the record of Plaintiff's visit with Dr. Meisel indicates that Plaintiff reported that she lived alone.  AR 1317, 1318.

2016, Plaintiff's asthma "show[ed] no change," AR 1418; and on November 8, 2016, Plaintiff's asthma had become worse since her last appointment, AR 1432 (although there is nothing in the treatment record for the previous appointment on September 27, 2016 regarding the status of Plaintiff's asthma, *see* AR 1428-31). Moreover, all of the consultative examiners who examined Plaintiff in connection with her physical impairments agreed with Dr. Tosiello that Plaintiff should avoid exposure to smoke, dust, and other respiratory irritants. *See* AR 1284 (Dr. Salon), 1320 (Dr. Meisel), 1559 (Dr. Ram Ravi). Again, the ALJ did not provide good reasons for discounting Dr. Tosiello's opinion on this point, and the Court cannot discern the reasons for the ALJ's rejection of this portion of Dr. Tosiello's opinion.

With respect to Dr. Tosiello's February 7, 2017 opinion, ALJ Romeo gave "little weight" to the entirety of the opinion, stating only that "Dr. Tosiello's opinion that the claimant can never handle, finger, or feel is a bit extreme and makes one wonder how the claimant would be able to eat. In June 2017, the claimant reported crocheting." AR 29 (citing AR 1863—Dr. Tosiello's treatment note for an appointment on June 27, 2017). Unlike her assessment of the August 9, 2016 opinion, and without any explanation, ALJ Romeo did not address any of the other limitations noted by Dr. Tosiello in this opinion, let alone assign any weight to them or provide any reasons why she did not assign any weight to them. And the one treatment note cited by the ALJ, when viewed in its entirety, is not nearly as inconsistent with Dr. Tosiello's findings as ALJ Romeo suggests. Specifically, the treatment note states that Plaintiff "*always gets better in the summer* and she hasn't had an infusion in 2 months. She is able to crochet." AR 1863 (emphasis added); *see also* AR 1864 ("Her RA is better in the summer, remarkably so . . . "). In other words, it is unclear from the note whether Plaintiff's "improvement" was anything more than seasonal and temporary. Further, the ability to engage in certain activities of daily living,

such as eating or occasionally pursuing a hobby like crocheting, is not necessarily reflective of

an ability to perform work-related activities over the course of an eight-hour workday, nor is it

inconsistent with a finding of disability.  Plaintiff testified at her April 12, 2017 administrative

hearing that she loved to crochet when she could, but that it was tough on her hands, and she

crocheted "once in a while, not all the time."  AR 236.  "'[A] claimant need not be an invalid to

be found disabled under the Social Security Act.'"  *Colgan*, 22 F.4th at 363 (quoting *Balsamo v.*

*Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).  Moreover, "[w]hen a disabled person gamely chooses

to endure pain in order to pursue important goals, such as attending church and helping [a

spouse] on occasion go shopping for their family, it would be a shame to hold this endurance

against him [or her] in determining benefits unless his [or her] conduct truly showed that he [or

she] is capable of working."  *Id.* (quoting *Balsamo*, 142 F.3d at 81-82).  In this case, Plaintiff's

ability to use her hands to eat and occasionally crochet is not inconsistent with limitations

assessed by Dr. Tosiello regarding Plaintiff's ability to use her hands to perform work-related

activities, and it is certainly not a basis, standing alone, to discount Dr. Tosiello's February 7,

2017 opinion in its entirety.  ALJ Romeo hardly provided any reasons why she did not give this

opinion from Dr. Tosiello controlling weight—indeed, she did not even address most of the

findings in Dr. Tosiello's statement—and those limited reasons the ALJ did provide were not the

types of "good reasons" required by SSA regulations to discount the opinion of a treating

physician pursuant to the pre-March 27, 2017 treating source rule.

Finally, with respect to Dr. Tosiello's February 28, 2019 opinion regarding Plaintiff's

physical impairments, ALJ Romeo stated only that she gave the opinion "limited weight"

"because [Dr. Tosiello's] own opinions are not consistent with each other and are not supported

by the treating records or other independent exams."  AR 30.  But the ALJ provided no

19

explanation of how this opinion is inconsistent with Dr. Tosiello's prior opinions; how Dr.

Tosiello's opinions are inconsistent with each other; or how this opinion is not supported by the

treatment records or consultative examination reports.  The Court has reviewed all of Dr.

Tosiello's opinions and cannot discern material differences among those opinions; since ALJ

Romeo appears to have relied significantly on purported inconsistences among the opinions, it

was incumbent upon her to provide a much more substantial explanation of her reasoning.

Moreover, treatment records around the time of this opinion, cited by the Commissioner, *see*

Def.'s Mem. of Law at 16, raise further questions that are not adequately addressed in the ALJ's

decision.  Dr. Tosiello's record for a January 8, 2019 appointment states that Plaintiff was "able

to care for her 3 year old son which she was never able to do before."  AR 1615.  ALJ Romeo

specifically mentions this point in her concluding sentence regarding Plaintiff's RFC.  AR 36.

Aside from the fact that there is no prior mention of Plaintiff having a toddler son anywhere else

in the treatment records, the ALJ nowhere explains why, if she credits Plaintiff's report that she

could care for her three-year-old son in January 2019, she apparently does *not* credit Plaintiff's

report that "she was never able to do [so] before," which would tend to support Dr. Tosiello's

opinions.

   The deficiencies in ALJ Romeo's application of the treating physician rule are made even

more apparent by the Commissioner's cursory—and entirely unconvincing—assertion that "the

ALJ explained the weight he [*sic*] gave Dr. Tosiello's functional assessments of August 9, 2016,

February 7, 2017, and February 28, 2019."  Def.'s Mem. of Law at 18.  As stated above, ALJ

Romeo did not, in fact, assign any weight to portions of these functional assessments or explain

the weights that she did assign, and it is telling that the Commissioner can come up with no

greater rationale than to cite to the ALJ's plainly inadequate explanations.  The ALJ's failure to

correctly apply the treating source rule to these opinions from Plaintiff's longtime treating physician requires remand of this matter.  *See Hamilton*, 2023 WL 2395931 at *3 (remanding to the SSA "[b]ecause the ALJ failed to discuss the *Burgess* factors in evaluating [the treating physician's] opinion, leaving us without confidence that the substance of the treating physician rule was observed").  On remand, the ALJ will have to reevaluate all of Dr. Tosiello's opinions, applying the correct legal standard; to the extent the ALJ continues to believe that the opinions offered by Dr. Tosiello are not entitled to controlling weight, she must carefully explain her application of the *Burgess* factors and provide "good reasons" for her assessment of Dr. Tosiello's opinions.

In light of the remand, the Court declines to address the parties' arguments concerning whether there was substantial evidence to support the ALJ's RFC determination, or the propriety of the other jobs cited by the VE, and relied upon by the ALJ, at step five of the disability analysis.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 31) is GRANTED, the Commissioner's motion for judgment on the pleadings (ECF No. 41) is DENIED, and this matter is remanded for further administrative proceedings in accordance with sentence four of 42 U.S.C. § 405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

Dated: March 27, 2023
White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge